In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-11-00665-CR
_____

LARRY CARL JENNINGS, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the Criminal District Court
Jefferson County, Texas
Trial Cause No. 11-11833

_____

**MEMORANDUM OPINION**

Larry Carl Jennings appeals his third-degree felony conviction for assault. *See* Tex. Penal Code Ann. § 22.01(b)(2)(B) (West 2011) (making an assault by choking that is committed intentionally, knowingly, or recklessly against a person whose relationship to or association with the defendant is described by sections 71.0021(b), 71.003, or 71.005 of the Texas Family Code a third-degree felony). In one issue, Jennings argues that the trial court erred in failing to instruct the jury on

1

the lesser-included offense of misdemeanor assault. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b) (West 2011) (defining misdemeanor assault). Because the trial court did not err in refusing Jennings' request for an instruction on misdemeanor assault, we affirm the trial court's judgment.

The determination of whether a lesser-included-offense instruction requested by a defendant must be given involves a two-step analysis. *See Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011). First, a court must determine "whether the lesser-included offense is included within the proof necessary to establish the offense charged." *Id.* at 68. Second, a court determines if there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *See id.*

In deciding whether the evidence raises an issue regarding a lesser-included offense, we consider all of the evidence presented at trial. *See Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). Whether the evidence is credible, whether it is controverted, or whether it conflicts with other evidence is not a consideration. *Id.* at 446-47. However, the fact that the jury may disbelieve crucial evidence regarding the offense being submitted does not require that the lesser-included offense be submitted to the jury. *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997). Rather, to require an instruction on the lesser-included

offense, the evidence before the jury must contain some evidence that is directly germane to the lesser-included offense. *See Goad*, 354 S.W.3d at 446 (citing *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003)). If there is a scintilla of evidence sufficient to make the lesser-included offense a valid, rational alternative to the charged offense, the trial court is required to include the requested instruction. *Id.*

The State does not dispute that misdemeanor assault is included within the proof necessary to establish the assault for which Jennings was convicted. Assuming without deciding that Jennings has satisfied the first step of the analysis, he was entitled to a lesser-included-offense instruction only if the evidence established that the lesser-included offense, misdemeanor assault, was "'a valid rational alternative to the charged offense.'" *See Sweed*, 351 S.W.3d at 68 (quoting *Segundo v. State*, 270 S.W.3d 79, 90-91 (Tex. Crim. App. 2008)). "Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012).

D.B., who was living with Jennings, testified that on a morning in April 2011, she and Jennings were arguing when Jennings slapped her, choked her, and

pushed her down. According to D.B., Jennings choked her hard enough to cause bruising and to affect her breathing, inducing her to see "spots and stuff."

K.N. testified that she saw D.B. the morning of the alleged assault. According to K.N., D.B. appeared distraught and shaken. K.N. noticed "bruises on [D.B.'s] face[,]" "bruises on her arm[,]" "scratch marks on . . . the left side of her neck," and "blood on her clothing." K.N. also testified that she saw bruises and scratches on D.B.'s neck, and K.N. explained that the bruises on D.B.'s neck were consistent with "[s]trangulation, choking, [or] someone putting their hands around [D.B.'s] neck." K.N. also explained that D.B. told her that Jennings assaulted her, hit her, and choked her. K.N. called the police because she was concerned for D.B.

Subsequently, D.B. spoke to Matthew Reeves, a Groves Police Department officer. According to Officer Reeves, D.B. told him that she and Jennings argued and that Jennings hit her, choked her, and slapped her. Officer Reeves testified that he saw bruises on D.B.'s neck, face, forehead, and on one of her arms. The evidence admitted before the jury included several photographs taken by Officer Reeves that show the bruises, and the photographs are consistent with the bruises described by various witnesses during Jennings' trial. In Officer Reeves's opinion, D.B.'s injuries were consistent with being choked.

Approximately two weeks after the alleged assault, Detective Kirk Rice obtained D.B.'s statement and interviewed Jennings on the phone. According to Detective Rice, the injuries depicted in the photographs taken during the investigation were consistent with someone being choked. Detective Rice also explained that during Jennings' interview, Jennings denied that an assault occurred and stated D.B. was "making it up."

Four witnesses testified for Jennings. In his brief, Jennings has not cited any of their testimony as support for his claim that he was entitled to an instruction on misdemeanor assault. Nevertheless, Jennings' first three witnesses did not testify that they witnessed the incident, nor did they testify that D.B. or Jennings told them what had occurred. We conclude that the testimonies of Jennings' first three witnesses are not relevant to resolving his issue.

L.M. was Jennings' fourth witness. L.M., who said that she had lived in Jennings' household from time to time over the last ten years, testified that Jennings was like a father to her. According to L.M., she was present during the altercation. However, L.M. explained that she never saw Jennings choke, hit, or slap D.B.; instead, L.M. testified that she heard D.B. and Jennings arguing over bills, and she saw Jennings take D.B.'s phone. During her direct examination, L.M. agreed that she had never seen the bruise shown in the pictures that was on D.B.'s

5

neck, and she did not know where that mark came from. However, she explained that other bruises on D.B.'s body could have resulted from D.B.'s throwing around furniture or running into a wall. L.M. further testified that the bruise on D.B.'s arm occurred when a computer desk fell on D.B. while D.B assembled it.

Jennings argues that the evidence raises a question of fact regarding misdemeanor assault. According to Jennings, based on the evidence, the jury could have found that he did not choke D.B., that her injuries were accidental, or that the pressure on D.B.'s neck was not sufficient to impede either her blood flow or her breath. The State responds that Jennings was not entitled to such an instruction because there was no evidence presented that Jennings, if guilty, was guilty only of the offense of misdemeanor assault.

Choking is an element of the felony offense at issue. *See* Tex. Penal Code Ann. § 22.01(b)(2)(B). Here, the evidence establishes that D.B. had a bruised neck and that Jennings choked her. There was no evidence introduced during trial that suggested either that the injury to D.B.'s neck or that Jennings' act of choking her was accidental. While the jury was free to reject D.B.'s account regarding how the injury to her neck occurred, or to reject her testimony that Jennings had choked her, the fact that the jury can reject a witness's testimony is not sufficient to provide the jury a rational basis on which to convict on a lesser-included offense.

6

*See Sweed*, 351 S.W.3d at 68. Although Jennings did not testify at trial, Detective Rice stated that Jennings told him during his investigation of the offense that he did not assault D.B. Jennings' denial is some evidence that no assault occurred, but it is not evidence that any assault that may have occurred was accidental. Finally, the only evidence in the record concerning the force applied in the incident shows that Jennings choked D.B. with sufficient force to affect her breathing or her blood flow.

Because there was no evidence raised at trial that would permit a rational jury to find that, if Jennings was guilty, he was guilty only of misdemeanor assault, we conclude the trial court properly denied Jennings' request to instruct the jury on misdemeanor assault.[1] *See Cavazos*, 382 S.W.3d at 385; *Sweed*, 351 S.W.3d at 68. We overrule Jennings' sole issue and affirm the trial court's judgment.

---

[1]At trial, Jennings presented a second argument in support of his request for an instruction on misdemeanor assault. Jennings' trial attorney asserted that Jennings did not live with D.B. at the time of the offense, claiming that D.B. did not have the relationship required by statute to elevate the offense to a third-degree felony. *See* Tex. Penal Code Ann. § 22.01(b)(2) (West 2011) (elevating a misdemeanor assault to a third-degree felony if the offense is committed against a person whose relationship with the defendant is described in the family violence sections of the Texas Family Code). While Jennings has not advanced this part of his trial argument on appeal, the record is uncontested that before April 2011, D.B. and Jennings lived together and had a dating relationship. The evidence in the record disputing whether, at the time of the offense, D.B. and Jennings were in a dating relationship, under these circumstances, does not show that Jennings could not be prosecuted for third-degree felony assault. *See* Tex. Family Code Ann. §

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on March 28, 2013
Opinion Delivered June 12, 2013
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

---

71.0021 (West Supp. 2012) (defining the victim of dating violence to include persons "with whom the actor has or has had a dating relationship"), § 71.006 (West 2008) (defining "member of a household" to include persons who have lived in the household in the past).

8